## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| HOUSTON MALDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04 C 2822 |
| vs. | ) |
| | ) Magistrate Judge Schenkier |
| THE CITY OF WAUKEGAN, | ) |
| ILLINOIS, a municipal corporation; and | ) |
| JAMES KIRBY, individually and in his | ) |
| official capacity as a City of Waukegan | ) |
| Police Officer, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

This lawsuit arises out of a bizarre and unfortunate encounter between plaintiff, Houston Malden, and James Kirby, a police officer of the City of Waukegan, that took place on April 24, 2002. During that encounter, Officer Kirby shot Mr. Malden, and Mr. Malden drove off in Officer Kirby's service vehicle. As a result of that encounter, Mr. Malden was charged with various offenses, including aggravated vehicular hijacking, a Class X felony under Illinois law that would have required Mr. Malden to serve a period of incarceration had he been convicted. However, pursuant to a plea agreement, Mr. Malden plead guilty to the lesser charge of attempted aggravated vehicular hijacking, all other charges were dismissed, and Mr. Malden was sentenced to probation.

In this lawsuit, Mr. Malden now seeks damages from Officer Kirby and the City as a result of the gunshot wounds he suffered during the encounter. In his six-count amended complaint, Mr. Malden asserts federal claims against Officer Kirby for violations of the fourth and fourteenth amendments (Counts I and II); federal *Monell* claims against the City, on the grounds that Officer

Kirby's alleged fourth and fourteenth amendment violations occurred pursuant to a policy and practice of the City (Counts III and IV); and state law claims seeking to impose liability against the City under theories of *respondeat superior* (Count V) and indemnity (Count VI).

Defendants have moved for summary judgment on Counts I, III and VI (doc. # 112); Counts II, IV and V already have been dismissed (doc. # 37: 05/11/05 Mem. Op. and Order). In their motion, defendants assert that Mr. Malden's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), because his theory of liability for the injuries he suffered in the April 24, 2002 encounter would necessarily imply the invalidity of his state law conviction arising out of that same encounter. For the reasons set forth below, we agree and thus grant defendants' motion for summary judgment.[1]

## I.

Mr. Malden is a resident of the City of Waukegan (Defendants' Local Rule 56.1 Statement of Undisputed Facts ("DUF") ¶ 1; Plaintiff's Response to Defendants' Local Rule 56.1 Statement of Undisputed Facts ("PUF") ¶ 1). The individual defendant, James Kirby, was and is a police officer for the City (*Id.*). All events relevant to the case occurred in the City of Waukegan, Illinois, which is also named as a defendant (*Id.*).

On the morning of April 24, 2002, Mr. Malden entered the backseat of a limousine that was parked on the side of the road because, after consulting with the driver, he believed it was waiting for him (Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Facts ("PAF") ¶ 1, 2; Defendants' Answer to Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Facts ("DAF") ¶ 1, 2). Once Mr. Malden entered the limousine, the limousine driver proceeded to the address of

---

[1]Pursuant to the consent of the parties and 28 U.S.C. § 636(c), on June 30, 2006, this case was reassigned to this Court for all proceedings, including the entry of final judgment (doc. ## 60-61).

his scheduled fare (PAF ¶ 3; DAF ¶ 3). Upon arriving at the address, the driver determined that Mr. Malden was not supposed to be in the back of the limousine and called the Waukegan Police Department for assistance (PAF ¶ 3, 4; DAF ¶ 3, 4). Officer Kirby responded to the call (*Id.*).

After Officer Kirby's arrival, the parties' accounts of what occurred significantly diverge. What is undisputed is that Officer Kirby opened the door to the limousine, and Mr. Malden exited the vehicle (PAF ¶ 5; DAF ¶ 5). Officer Kirby and Mr. Malden engaged in a conversation, after which Mr. Malden turned and walked away from Officer Kirby (PAF ¶¶ 6-7; DAF ¶¶ 6-7). Officer Kirby ordered Mr. Malden to stop, but Mr. Malden continued walking toward his home (PAF ¶ 7; DAF ¶ 7). At some point after this exchange, Officer Kirby pepper sprayed Mr. Malden (PAF ¶ 8; DAF ¶ 8). Officer Kirby then backed away from Mr. Malden and fired his service revolver in the direction of Mr. Malden (PAF ¶¶ 11-12; DAF ¶¶ 11-12). Officer Kirby then ceased firing (PAF ¶ 16; DAF ¶ 16); as we explain below, the parties dispute whether he later resumed firing. Mr. Malden ultimately entered Officer Kirby's squad car and drove away (PAF ¶ 21, 27; DAF ¶ 18). Mr. Malden drove around the block and returned to the scene where Officer Kirby remained (PAF ¶ 27; DAF ¶ 27). At that point, Mr. Malden drove away in the squad car and did not return (PAF ¶ 29; DAF ¶ 29). The car was recovered only when Mr. Malden later crashed it into a tree (Am. Compl. ¶ 25).

While those basic facts are undisputed, many other material facts about the encounter are hotly contested. We summarize those disputed facts below:

- Mr. Malden states that he gave Officer Kirby no reason to use pepper spray on him (PAF ¶ 9). On the other hand, defendants say that Officer Kirby used the pepper spray only after Mr. Malden first disobeyed an order to put down a flashlight he was holding, assumed an aggressive posture and acted erratically, walked abruptly and directly at Officer Kirby, said to Officer Kirby "[d]on't touch me, I'll smash your head in, I'll kill you," and started to get into Officer Kirby's service vehicle (DAF ¶¶ 8-9).

3

- Mr. Malden states that immediately after the use of pepper spray, Officer Kirby shot and wounded Mr. Malden in the left shoulder, and that Mr. Malden pleaded with Officer Kirby to stop shooting (PAF ¶¶ 13-15). Officer Kirby does not dispute opening fire or that Mr. Malden was struck, but denies the specifics of where Mr. Malden was wounded and that Mr. Malden pleaded with him to hold his fire (DAF ¶¶ 13-15).

- Mr. Malden states that despite obeying Officer Kirby's subsequent command to turn off his flashlight, Officer Kirby resumed shooting at him and struck him in the right arm (PAF ¶¶ 16-17). Officer Kirby disputes that he ordered Mr. Malden to turn off the flashlight or that he fired at him again (DAF ¶¶ 16-17).

- Mr. Malden states that he then ran toward Officer Kirby, and that Officer Kirby opened fire on him a third time, striking him twice in the leg (PAF ¶¶ 18-19). Officer Kirby denies that he opened fire again, and states that after he discharged his weapon for the first (and, he says, only) time, Mr. Malden got into his service vehicle and drove away (DAF ¶¶ 18-19).

- Mr. Malden states that after Officer Kirby discharged his weapon a third time, Mr. Malden continued running toward the officer but then ran toward the service vehicle and entered it (PAF ¶¶ 20-21). Officer Kirby denies that this was the sequence of events that occurred (DAF ¶¶ 20-21).

- Mr. Malden says he did not immediately drive away, but only did so once he saw Officer Kirby "take a knee . . . and point[] his flashlight at the steering wheel" (PAF ¶¶ 22-24). Officer Kirby denies this sequence of events and says that Mr. Malden drove off without delay once he entered the vehicle (DAF ¶¶ 22-24).

- Mr. Malden says that, while he was in the vehicle, Officer Kirby shot at him, striking him in his right knee (PAF ¶ 25). Mr. Malden then began to drive away, and Officer Kirby continued shooting, striking Mr. Malden three times in the upper chest and arm (PAF ¶¶ 25-26). Officer Kirby denies he shot at Mr. Malden while he was in the vehicle (DAF ¶¶ 25-26).

- Mr. Malden says that he drove the service vehicle around the block and once again encountered Officer Kirby, at which point he contemplated exiting the vehicle to try to defuse the situation, but when Officer Kirby fired on him for a fifth time, he drove off (PAF ¶¶ 27-28). Officer Kirby disputes that there was a fifth occasion when he fired at Mr. Malden and disputes that Mr.

Malden communicated that he was trying to defuse the situation (DAF ¶¶ 27-28).

Two legal proceedings followed this encounter: a state law prosecution against Mr. Malden, and this lawsuit. We discuss each of them in turn.

## A.

There is no material dispute about the criminal proceedings that followed this encounter. Mr. Malden was charged with a number of crimes, including aggravated vehicular hijacking (DUF, Ex. 5). Plea negotiations followed, which resulted in a February 26, 2003 hearing during which Mr. Malden plead guilty to the lesser charge of attempted aggravated vehicular hijacking (DUF, Ex. 3). At the hearing, Mr. Malden was informed that if he were convicted of aggravated vehicular hijacking, a Class X felony, neither probation, conditional discharge, nor periodic imprisonment would be available sentences (*Id.* at 8). He was also informed that if he plead guilty to the lesser charge of attempted aggravated vehicular hijacking, probation or conditional discharge would be possible sentences, and that as part of that agreement, seven other charges against Mr. Malden would be dismissed (*Id.* at 7-9).

The judge in the criminal case discussed with Mr. Malden the rights he would waive by entering into a guilty plea, and confirmed that Mr. Malden had discussed the plea agreement with his attorneys and understood what the plea involved (DUF, Ex. 3, at 7-11). The State then proffered a statement of the factual basis for Mr. Malden to plead guilty to attempted aggravated vehicular hijacking, which included evidence that Mr. Malden acted in "an aggressive threatening manner towards Officer Kirby in that the defendant had a large metal flashlight in his hands" (*Id.* at 12); that, when Mr. Malden continued to act in an "aggressive, threatening manner with the metal flashlight,"

5

Officer Kirby discharged his service revolver and wounded Mr. Malden in the chest, arm and leg area (*Id.*); and that Mr. Malden continued to act aggressively and took Officer Kirby's service vehicle without permission and sped out of the subdivision, which led to his pursuit and apprehension after he crashed into a tree (*Id.* at 12-13).

The defense stipulated that this would be the testimony by State's witnesses (DUF, Ex. 3, at 13). However, earlier in the hearing, the presiding judge did indicate that Mr. Malden's attorneys had informed the judge that "there are some factual discrepanc[ies] as [Mr. Malden saw] it with regard to Kirby's statement," including that "you just wanted to go home and you got into the squad car for your safety because the officer would not stop shooting" (*Id.* at 4). That said, based on the State's proffer the judge found that there was a sufficient factual basis for the offense of attempted aggravated vehicular hijacking and thus accepted the plea (*Id.* at 13-14).

There is no dispute that as a result of the plea, the aggravated vehicular hijacking charge was amended as follows:

> Houston Malden, d/o/b: 6/17/72, hereinafter called the defendant, on or about April 24, 2002, in the County of Lake, State of Illinois, committed the offense of Attempt [sic] Aggravated Vehicular Hijacking in that the said defendant took a substantial step toward committing the offense of Aggravated Vehicular Hijacking in that the defendant knowingly took a motor vehicle, a 2001 Chevrolet Waukegan Police Department squad car, with Illinois registration number M131715, from the immediate presence of James Kirby by threatening the imminent use of force and during the commission of this offense the Defendant was armed with a dangerous weapon, a large flashlight, in violation of 720 ILCS 5/8-4(a) and 5/18-4(a)(3) contrary to the form of the statutes in such case made and provided and against the peace and dignity of the people of the State of Illinois.

(DUF ¶ 7 and Ex. 5; PUF ¶ 7). This was the offense to which Mr. Malden plead guilty (DUF ¶ 4; PUF ¶ 4).

Thereafter, on April 21, 2003, the state court judge conducted a sentencing hearing (DUF, Ex. 4). At that hearing, Mr. Malden stated that "[he] deeply regret[ted] that this incident occurred. [He'd] never been involved in anything like this before in [his] life" (*Id.* at 7). The sentencing arguments of counsel in aggravation and mitigation suggest that Mr. Malden was extremely troubled at the time this incident occurred, and the judge acknowledged this during sentencing (*Id.* at 24-28). The judge imposed a sentence of four years of intensive probation, along with community service, an order to pay $18,473.08 in restitution (for the damage to the service vehicle Mr. Malden crashed into the tree), and other conditions (*Id.* at 28-30). The judge stated that her sentence of probation came despite the fact that she found Mr. Malden approached Officer Kirby aggressively, took a squad car, and caused a high speed chase, and that she was willing to impose a sentence of probation "only because [the] Waukegan Police Department agreed" (*Id.* at 23, 26).

One month later, on May 19, 2003, Mr. Malden filed a motion to withdraw his guilty plea (DUF ¶ 8 and Ex. 6). That motion, filed by new counsel, asserted that Mr. Malden's prior counsel had not advised him of defenses to the criminal charges: in particular, the defenses of necessity and self-defense (*Id.*, Ex. 6, ¶ 5). The motion alleged that had Mr. Malden been aware of those defenses, he would not have plead guilty (*Id.* at ¶ 13). On August 8, 2003, the state trial court denied the motion (DUF ¶ 9).

**B.**

On April 20, 2004, Mr. Malden filed this lawsuit. At the time of filing, one of the attorneys representing Mr. Malden was one of the attorneys who also had filed the motion to withdraw the guilty plea. In the amended complaint, Mr. Malden asserted a number of factual allegations relevant to the pending motion:

7

- Mr. Malden alleged that prior to being maced and shot at, he gave Officer Kirby no provocation (Am. Compl. ¶ 17).

- Mr. Malden alleged that because he had been shot at and wounded, he "was forced to take a marked City of Waukegan squad car to preserve his life" (*Id.* at ¶ 24).

- Mr. Malden alleged that at the time Officer Kirby shot at him, Mr. Malden had not "threaten[ed] to strike" Officer Kirby, and did not have on his person a "firearm, knife, or any other dangerous weapon." Mr. Malden also alleged that Officer Kirby never purported to see Mr. Malden with a firearm, knife or other dangerous weapon (*Id.* at ¶¶ 33-34).

- Mr. Malden alleged that in an effort to conceal his unlawful actions, Officer Kirby "lied about the events that occurred, falsified police reports, and tampered with evidence from the crime scene and witness testimony" (*Id.* at ¶ 32).

Mr. Malden has never withdrawn these allegations. To the contrary, in his deposition, Mr. Malden denied that he was attempting to hijack the service vehicle; Mr. Malden says that he plead guilty only to "taking the squad car so that I would not be killed" (DUF, Ex. 7 at 36-37). The summary judgment papers show that Mr. Malden continues to assert that he took Officer Kirby's service vehicle so that he "would not be killed," and to "save his life" (DUF ¶¶ 10-11; PUF ¶¶ 10-11).

## II.

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). The initial burden

may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325.

Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "must – by affidavits or as otherwise provided [for in Rule 56] – set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party.

The use of excessive force by law enforcement officers during the course of an arrest or seizure constitutes a fourth amendment violation actionable under Section 1983. *Graham v. Connor*, 490 U.S. 386 (1989). Excessive force claims must be analyzed under an "objective reasonableness" standard, which requires the Court to evaluate the circumstances of each particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see also Frazell v. Flanigan*, 102 F.3d 877, 883 (7th Cir. 1996); *Clash v. Beatty*, 77 F.3d 1045, 1047 (7th Cir. 1996). The objective nature of the inquiry mandates against consideration of the officer's intent or motivation. *Graham*, 490 U.S. at 397; *Frazell*, 102 F.3d at 883.

9

Mr. Malden claims that there were six incidents of excessive force: Officer Kirby's initial use of pepper spray against Mr. Malden, and then five separate occasions during the encounter when Officer Kirby allegedly fired at him. The parties' summary judgment papers set forth differing factual assertions as to important aspects of each of those events. If that were all that this case presented, those factual disputes would be material and would preclude summary judgment.

But, there is more here. Defendants argue that Mr. Malden's claims in Count I, III and VI are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* holds that before a Section 1983 plaintiff may recover damages for alleged harm "caused by actions whose unlawfulness would render a conviction or sentence invalid," the plaintiff must first prove that his conviction or sentence has been reversed, expunged, or called into question by the grant of a petition for *habeas corpus. Id.* at 486-87. The "favorable termination" rule announced in *Heck* is grounded in the "strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Id.* at 484 (citation omitted). The favorable termination rule seeks to vindicate that policy by preventing "collateral attack on [a] conviction through the vehicle of a civil suit." *Id.* (citation omitted).

Defendants argue that Mr. Malden's claims in Counts I, III and VI suggest the invalidity of his state court conviction for attempted aggravated vehicular hijacking. They argue that under *Heck*, Mr. Malden cannot pursue those claims because his underlying conviction has not been reversed, expunged or called into question by the grant of a *habeas* petition. Mr. Malden argues that defendants' contention fails for two reasons. *First*, Mr. Malden asserts that his claims do not suggest the invalidity of his conviction (Pl.'s Mem. at 7-15). *Second*, Mr. Malden asserts that *Heck* does not

apply to this case at all, since he no longer is in custody as a result of that conviction (*Id*. at 4-7). We address, and reject, each of those arguments in turn.

## III.

"To properly apply *Heck*'s bar against certain damage actions, a district court must analyze the relationship between the plaintiff's Section 1983 claim and the charge on which he was convicted." *Van Gilder v. Baker*, 435 F.3d 689, 691 (7th Cir. 2006). If a judgment for plaintiff in the civil case would imply the conviction's invalidity, the complaint must be dismissed until the plaintiff can show the conviction or sentence has been invalidated. *Heck*, 512 U.S. at 487. However, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . . ." *Id.* ( emphasis in original) (footnote omitted).

In applying this analysis, "the district court must consider whether a judgment in favor of the plaintiff would *necessarily* imply the invalidity of his conviction or sentence . . . ." *Heck*, 512 U.S. at 487 (emphasis added). The Supreme Court has explained that it was "careful in *Heck* to stress the importance of the term 'necessarily.'" *Nelson v. Campbell*, 541 U.S. 637, 647 (2004). "To hold otherwise would have cut off potentially valid damages actions as to which a plaintiff might never obtain favorable termination - suits that could otherwise have gone forward had the plaintiff not been convicted." *Id.*

A number of courts within this circuit have used this analysis in considering *Heck* defenses. We discuss below several of those decisions, which we find instructive in performing the *Heck* analysis here.

11

In *Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003), the plaintiff had been convicted on drug-related charges after federal agents found drugs in his house. He brought a Section 1983 suit, in which he alleged that while conducting a search of his home incident to the arrest that led to his criminal conviction, the defendant officers had illegally seized – indeed, had stolen – gems and cash. The trial judge rejected a *Heck* defense and allowed the case to proceed to a trial, which resulted in a judgment for the defendants.

On appeal, the Seventh Circuit stated that the trial judge should have held the case precluded under *Heck*, because plaintiff had from the outset "insisted that he was not trying to sell the officers heroin, as they testified; he was trying to sell them gems and they stole them." 324 F.3d at 489. The Seventh Circuit stated that this position, to which plaintiff "adhered steadfastly," was an argument that there were no drugs and that he had been framed in the criminal case. *Id.* at 490. The Seventh Circuit deemed this to be a "collateral attack" on the criminal conviction that was foreclosed by *Heck. Id.* The Seventh Circuit explained it was "irrelevant" that plaintiff disclaimed any intention of challenging his conviction: "if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." *Id.* The Seventh Circuit concluded that because plaintiff "is challenging the validity of the guilty verdict by denying that there were any drugs and arguing that he was framed, he is barred by *Heck. Id.*

In *VanGilder*, the plaintiff was arrested for public intoxication, and was taken to the hospital for a blood test. 435 F.3d at 690-91. Plaintiff alleged that when he refused to cooperate in having blood drawn, an altercation ensued with the defendant officer. *Id.* Plaintiff alleged that while his hands were cuffed, the defendant officer punched him repeatedly in the face, causing bruising and broken orbital bones. *Id.* at 691. Plaintiff was charged with felony battery against a police officer,

12

but pursuant to a plea was convicted of the misdemeanor of resisting a law enforcement officer. *Id.* at 692. Plaintiff pursued an excessive force claim against the officer, and the district court granted summary judgment to the officer on the ground that *Heck* barred the claim.

On appeal, the Seventh Circuit reversed. The appeals court explained that "whether this suit is barred by *Heck* hinges on whether an action against [the officer] for excessive use of force necessarily implies the invalidity of VanGilder's conviction for resisting." 435 F.3d at 692. The Seventh Circuit then explained why the answer to that question was no:

> [I]t is clear that a judgment for VanGilder, should he prevail, would not create 'two conflicting resolutions arising out of the same or identical transaction.' VanGilder does not collaterally attack his conviction, [or] deny that he resisted Baker's order to comply with the blood draw, or challenge the factual basis presented at his change of plea hearing. Rather, VanGilder claims that he suffered unnecessary injuries because Baker's response to his resistance – a beating to the face that resulted in bruises and broken bones – was not, under the law governing excessive use of force, objectively reasonable.

*Id.* (citation omitted).

In *Ruffin v. Kane County Sheriff Dept.*, No. 01 C 4898, 2006 WL 2088186 (N.D.Ill. 2006), the district court carefully considered *Okoro* and *Van Gilder* in concluding that *Heck* did not bar the plaintiff's Section 1983 claims. In *Ruffin*, the plaintiff had led police officers on a high-speed chase, which ended only after a squad car rammed into the back end of plaintiff's car and caused it to roll over. *Id.* at *2. Ruffin alleged that when he regained consciousness, one of the officers shot at him to subdue him. *Id.* at *3. Ruffin alleged that then another officer arrived at the scene and shot him four more times and that the same officer kicked him while he was handcuffed. *Id.* In connection with that encounter, Ruffin plead guilty to unlawful possession of a stolen motor vehicle, aggravated assault of an officer, and aggravated fleeing and eluding a police officer. *Id.* at *4.

13

In his civil action, Ruffin alleged (among other things) that the defendant officer committed excessive force. Defendants moved to dismiss that claim under *Heck*. The district court denied the motion, stating that "Ruffin's Section 1983 allegations more resemble the permissible claims in *VanGilder* than the problematic ones in *Okoro*. 2006 WL 2088186, * 11. The court explained that Ruffin's civil pleadings did not deny the factual basis underlying his criminal conviction, and that "a victory for Ruffin in the present matter could plausibly mean that a jury found that, although Ruffin committed aggravated assault against Officer Walton, either 'he suffered unnecessary injuries because' Officer Lewis's response to the assault was not objectively reasonable, or he suffered the use of excessive force 'after the event' that led to the aggravated assault conviction." *Id.* (citation omitted). As a result, "a finding for Ruffin in this suit would not create two conflicting resolutions out of the same incident." *Id.*

In our case, after "analyz[ing] the relationship between the plaintiff's Section 1983 claim and the charge on which he was convicted," *VanGilder*, 435 F.3d at 691, we conclude that Mr. Malden's claim – and his theory underlying that claim – necessarily implies the invalidity of his criminal conviction.

## A.

We begin by looking at the offense to which Mr. Malden plead guilty. There is no dispute that Mr. Malden plead guilty to the following charge of attempted aggravated vehicular hijacking:

> Houston Malden, d/o/b: 6/17/72, hereinafter called the defendant, on or about April 24, 2002, in the County of Lake, State of Illinois, committed the offense of Attempt [sic] Aggravated Vehicular Hijacking in that the said defendant took a substantial step toward committing the offense of Aggravated Vehicular Hijacking in that the defendant knowingly took a motor vehicle, a 2001 Chevrolet Waukegan Police Department squad car, with Illinois registration number M131715, from the immediate presence of James Kirby by threatening the imminent use of force and

14

during the commission of this offense the Defendant was armed with a dangerous weapon, a large flashlight, in violation of 720 ILCS 5/8-4(a) and 5/18-4(a)(3) contrary to the form of the statutes in such case made and provided and against the peace and dignity of the people of the State of Illinois.

(DUF ¶ 7 and Ex. 5; PUF ¶ 7).[2] Mr. Malden's conviction and sentence have not been reversed, invalidated or called into question by the issuance of a writ of *habeas corpus*. Mr. Malden did attempt to undo his guilty plea, but without success.

Mr. Malden's guilty plea constitutes "an admission[] of all the elements of [the] formal criminal charge." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). Thus, by pleading guilty, Mr. Malden admitted that he took Officer Kirby's service vehicle "by threatening the imminent use of force" while "armed with a dangerous weapon, a large flashlight" (DUF ¶ 7 and Ex. 5; PUF ¶ 7).

We note that in his deposition (but not in his summary judgment opposition), Mr. Malden states that he did not attempt to hijack Officer Kirby's service vehicle (DUF, Ex. 7 at 36) – which, of course, is the very offense to which he plead guilty. Mr. Malden said that he plead guilty only to "taking the squad car so that I would not be killed" (*Id.* at 37). To the extent that Mr. Malden is suggesting that he plead guilty even though he believed himself to be innocent, that suggestion would not allow him to avoid the impact of *Heck*. Under *North Carolina v. Alford*, 400 U.S. 25, 38 and n.10 (1970), a court can accept a guilty plea despite a defendant's claim of innocence so long

---

[2]This tracks the statutory requirements under Illinois law. The offense of aggravated vehicular hijacking, requires a showing that:

> 1) a person takes a motor vehicle, 2) from the person or the immediate presence of another, 3) by the use of force or by threatening the imminent use of force, and 4) that he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon, other than a firearm.

720 ILCS 5/18-3, 4. When an offense as charged as an attempt rather the a completed offense, Illinois law requires a demonstrated intent to commit the offense and some action "which constitute[d] a substantial step toward the commission of that offense." 720 ILCS 5/8-4.

as the court satisfies itself that there is a factual basis for the plea. Before accepting Mr. Malden's guilty plea, the judge in the criminal case did just that: she found that there was a factual basis for the plea. A number of courts have recognized that "a conviction based on an *Alford* plea can be used to impose *Heck's* favorable termination rule." *Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006); *see also Ruffin*, 2006 WL 2088186, at *8 (collecting cases).

## B.

We now consider Mr. Malden's amended complaint, which contains factual allegations directly at odds with his guilty plea. Mr. Malden's guilty plea constitutes an admission that he attempted to take Officer Kirby's vehicle by threatening the imminent use of force; but, in this case he alleges that he never provoked Officer Kirby or threatened to strike him (Am. Compl. ¶¶ 17, 33). In his guilty plea, Mr. Malden admitted that he was armed with a dangerous weapon; but, in this case, Mr. Malden claims that he did not at any time have a dangerous weapon (*Id.* at ¶¶ 34-35). Mr. Malden further alleges that Officer Kirby "lied about the events that occurred, falsified police reports, and tampered with evidence from the crime scene and witness testimony" (*Id.* at ¶ 32). This latter allegation is significant because, in finding a factual basis for the plea, the state court judge relied on the State's proffer of the testimony that Officer Kirby and another witness would provide – and, the defense stipulated that those persons would testify at trial in a manner consistent with the proffer (DUF Ex. 3, 11-14). If Mr. Malden prevailed on those allegations in this civil case, he would undermine key elements of the offense to which he plead guilty, and indeed, would suggest that the factual basis on which the state court judge accepted his plea was false. All of that would "necessarily imply the invalidity of his conviction." *Heck*, 512 U.S. at 487.

16

What's more, if proven, Mr. Malden's assertion that he took Officer Kirby's vehicle only to save his life (Am. Compl.¶ 24; DUF ¶¶ 10-11; PUF ¶¶ 10-11) further would imply the invalidity of his conviction. Under Illinois law, "necessity" is an absolute defense to a charge of criminal conduct:

> Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury which might reasonably result from his own conduct.

720 ILCS 5/7-13; *see also People v. Kucavik*, 854 N.E.2d 255, 259 (Ill. App. 2006). That is precisely Mr. Malden's allegation here: that he took the service vehicle only to avoid fatal injury at the hands of Officer Kirby. That allegation is flatly inconsistent with Mr. Malden's criminal conviction.

We find that this case presents facts that are more akin to the facts of *Okoro* than to those in *VanGilder* or *Ruffin*. In *Okoro*, plaintiff claimed that the defendant officers had stolen gems and money during an encounter for which he was convicted of drug dealing. In his civil case, plaintiff "insisted that he was not trying to sell the officers heroin, as they testified; he was trying to sell them gems and they stole them." 324 F.3d at 489. The Seventh Circuit stated that this position was an argument that "there were no drugs, that he [had been] framed" in the criminal case. *Id.* at 490. Similarly, in this case Mr. Malden denies that he threatened the use of force or that he did so with a dangerous weapon, and claims that he took the service vehicle only because it was necessary to save his life – which, as in *Okoro*, is in substance an argument that he did not commit the offense for which he was convicted. Indeed, plaintiff's allegation that Officer Kirby lied, falsified reports,

17

and tampered with evidence and witnesses is similar to the plaintiff's claim in *Okoro* that he had been framed in the criminal case.

By contrast, we find the facts in *Ruffin* to be materially different from those in our case. In *Ruffin*, the alleged excessive force occurred after the conduct that gave rise to the criminal conviction had been completed. Mr. Ruffin was convicted of stealing a motor vehicle, aggravated assault of an officer, and aggravated fleeing and eluding a police officer. 2006 WL 2088186, \*4. The alleged excessive force took place after Mr. Ruffin had been subdued and handcuffed, at which time an officer allegedly shot him four times and kicked him. *Id.* at 3. In this case, Mr. Malden's attempted aggravated vehicular hijacking did not draw to a close – that is, the attempt did not fail – until he crashed the vehicle into a tree. But, Mr. Malden alleges no episode of shooting or other excessive force after that time.

Nor does *VanGilder* advance Mr. Malden's attempt to avoid *Heck*. In *VanGilder*, the plaintiff admitted the conduct that formed the basis of his conviction for resisting arrest. 435 F.3d at 690-91. Plaintiff argued only that the officer's response to his criminal conduct was over the top, and thus was not objectively reasonable. *Id.* at 691-92. That is not what Mr. Malden has done here; he has asserted facts that would undermine the basis for his criminal conviction. Whether Mr. Malden could have conceded the criminal conduct to which he plead guilty and argued only that it was not objectively reasonable for Officer Kirby to shoot him is a question that we need not address. Mr. Malden is "the master of his ground," *Okoro*, 324 F.3d at 490, meaning that he controlled the allegations he chose to make in this case. And, we must decide this case on the basis of the case Mr. Malden has plead, and not on the basis of some hypothetical case that he might have – but did not – plead.

IV.

Having concluded that Mr. Malden's claims in this case, if successful, would necessarily imply the invalidity of his criminal conviction, we now address the question of whether *Heck* applies where, as here, a civil plaintiff no longer can challenge a criminal conviction through *habeas corpus*. We conclude that it does.

In *Heck*, the Supreme Court dealt with the "intersection of the two most fertile sources of federal-court prisoner litigation" – the basic federal civil rights statute, 42 U.S.C. § 1983, and the federal habeas corpus statute for state prisoners, 28 U.S.C. § 2254. *Heck* 512 U.S. at 480. The Court expressed its preference that the more specific *habeas* statute be used to challenge the legality of state-court convictions while the petitioner is in custody. *Id.* at 481. Section 1983 is available to plaintiffs who are not in custody, but can only be used if plaintiff's "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by state tribunal authorized to make such determination, or called into question by federal court's issuance of writ of habeas corpus." *Id.* at 487. In this way, the Court attempted to prevent overlap between the two statutes.

Justice Souter wrote a concurring opinion in *Heck*, stating that an exception to this "favorable termination" requirement should be made for former prisoners who cannot avail themselves of the *habeas* statute. Justice Souter wrote:

> If these individuals (people who were merely fined, for example, or who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences), like state prisoners, were required to show the prior invalidation of their convictions or sentences in order to obtain § 1983 damages for unconstitutional conviction or imprisonment, the result would be to deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling. The reason, of course, is that individuals not "in custody" cannot invoke federal *habeas* jurisdiction, the only statutory mechanism besides § 1983 by which

19

individuals may sue state officials in federal court for violating federal rights. That
would be an untoward result.

512 U.S. at 500 (Souter, J., concurring). Justice Souter was joined in his dissent by Justices

Blackmun, Stevens, and O'Connor. Justice Souter voiced this opinion once again in his concurrence

in *Spencer v. Kemma*, 523 U.S. 1, 18 (1998) (Souter, J., concurring). This time, he was joined by

Justices O'Connor, Ginsburg (who wrote a separate concurrence to express that she had changed the

view she took in *Heck*), and Breyer (who replaced Justice Blackmun on the Court). Justice Stevens

dissented, but wrote that he continued to support Justice Souter's view that when *habeas* relief was

not available, a plaintiff should be able to bring his action under Section 1983. *Id.* at 25 n. 8

(Stevens, J., dissenting).

Mr. Malden seizes on these statements in *Spencer* to argue that five justices have now

"renounced" *Heck's* favorable termination requirement in those cases where *habeas corpus* is

unavailable to a plaintiff in a civil rights case whose allegations would challenge a criminal

conviction (Pl.'s Mem. at 5). Mr. Malden argues that this means *Heck* is inapplicable here, since he

is not in custody as a result of the conviction and has no recourse to *habeas* relief in connection with

the conviction (*Id.* at 7). We find this argument unpersuasive for three reasons.

*First*, the Supreme Court has squarely rejected the proposition that lower courts may base

their decisions on speculation about the continuing vitality of Supreme Court precedent. "The Court

neither acknowledges nor holds that other courts should ever conclude that its more recent cases

have, by implication, overruled an earlier precedent. Rather, lower courts should follow the case

which directly controls, leaving to this Court the prerogative of overruling its own decisions."

*Agostini v. Felton*, 521 U.S. 203, 207 (1997); *see also Rodriguez de Quijas v. Shearson/American*

*Express, Inc.*, 490 U.S. 477, 484 (1989). By asking this Court to assume that *Spencer* overruled a portion of *Heck*, plaintiff asks us to do what the Supreme Court has expressly forbidden.

*Second*, we note that *Spencer* did not present the question of whether *Heck*'s favorable termination requirement applies where the prior conviction cannot be challenged by way of *habeas corpus*. In *Spencer*, the petitioner sought *habeas* relief in connection with an order revoking his parole. 523 U.S. at 3. The petitioner argued that his request for *habeas* relief was not moot, even though he had completed the term of imprisonment imposed as a result of the parole revocation. *Id.* The opinion of the Supreme Court, written by Justice Scalia, held that the petitioner could not pursue *habeas* relief because he failed to satisfy the Article III requirement of injury in fact. *Id.* at 14-16. As Justice Souter's concurrence acknowledged, the opinion of the Court did not reach the question of whether, given the unavailability of *habeas* relief, *Heck* would bar the petitioner from bringing a Section 1983 claim as a result of the parole revocation. *Id.* at 18-19 (Souter, J., concurring). Thus, the comments by the concurring justices in *Spencer* on that point were *dicta*, which did not – and could not – overrule or limit the reach of *Heck. See Kramer v. Village of North Fond Du Lac*, 384 F.3d 856, 863 n.3 (7th Cir. 2004) (noting that "a majority of justices indicated in dicta that a prisoner's release from custody frees him of the bar *Heck* otherwise places on § 1983 actions"); *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999) (describing *Spencer*'s comments on the reach of *Heck* as dictum).

*Third,* the composition of the Supreme Court has changed significantly since *Heck* and *Spencer* were decided. Two of the five justices who joined in the *Spencer* concurrence have left the Court: Justice O'Connor has been replaced by Justice Alito, and Justice Souter has been replaced by Justice Sotomayor. One of the justices who joined in the application of *Heck*'s favorable

21

termination requirement without qualification has left the Court: Chief Justice Rehnquist has been replaced by Chief Justice Roberts. Thus, a key premise of Mr. Malden's argument – that five sitting justices would not impose *Heck's* favorable termination requirement here, where *habeas* relief is unavailable – no longer holds. Even if *Agostini* were not the law, Mr. Malden does not explain how we should decide which of the three new Justices would give *stare decisis* effect to the full scope of *Heck*, which of them would endorse the exception proposed by Justice Souter, and which of them might blaze some different path. The only way in which this Court could make such a decision would be to engage in the kind of speculation that might make for interesting law review commentary, but that is not a sound basis for judicial decision making.

To bolster his argument, Mr. Malden argues that the Seventh Circuit "has indicated that it is likely to apply the principle articulated by Justice Souter rather than the 'favorable-termination' requirement enunciated in *Heck* (Pl.'s Mem. at 6). But, none of the cases Mr. Malden cites for that proposition have held that the favorable termination requirement is inapplicable where a plaintiff: (1) has an underlying criminal conviction, (2) no longer can seek *habeas* relief in connection with that conviction, and (3) asserts a Section 1983 claim that, if accepted, necessarily would imply the invalidity of that conviction. In *DeWalt v. Carter*, 224 F.3d 607, 616 (7th Cir. 2000), the appeals court addressed a different question, one that "the Supreme Court never has addressed": that is, "whether *Heck*'s favorable-termination requirement bars a prisoner's challenge under § 1983 to an administrative sanction that does not affect the length of confinement." In *Kramer*, 384 F.3d at 862-63, and *Carr*, 167 F.3d at 1125-27, the Seventh Circuit held that the defendants had waived any *Heck* defense by failing to timely raise it.

To be sure, all three of those decisions commented on the effect of *Spencer* on the favorable termination requirement in *Heck*. But, we do not view those comments as precedential rulings that bind us. For example, in *DeWalt*, the Seventh Circuit stated that the "concurring and dissenting opinions in *Spencer* reveal that five justices now hold the view that a Section 1983 action must be available to challenge the constitutional wrongs where federal *habeas* is not available." 224 F.3d at 617. But, that observation has been overtaken by subsequent events that have resulted in a turnover of one-third of the Justices of the Supreme Court. And, even in making that observation, the Seventh Circuit was careful to note that it was not disregarding the *Agostini* rule: "[W]e rely on separate opinions not to overrule precedent, but to help guide us in deciding an open question." *Id.* at 617 n.5.

In this case, by contrast, Mr. Malden asks us to use the concurring and dissenting opinions in *Spencer* to do precisely the opposite: to overrule *Heck* on the settled question of whether the favorable termination requirement applies where a Section 1983 claim would necessarily call into question the validity of a criminal conviction. For the reasons we have set forth above, we deny that request. We hold that *Heck*'s favorable termination requirement applies to this case, and bars Mr. Malden's claim in Count I.

## V.

Defendants claim that if summary judgment is granted on the excessive force claims in Count I, summary judgment also should be granted on the *Monell* claim in Count III and the state law indemnification claim in Count VI. Summary judgment is plainly appropriate on Counts III and VI. In Count III, Mr. Malden alleges that the violation he pleads in Count I was committed pursuant to a policy and practice of the City. The failure of Count I means that no *Monell* claim that depends

on the validity of Count I can proceed. *See Bielanski v. County of Kane*, 550 F.3d 632, 645 (7th Cir. 2008). Likewise, indemnity claims, such as those alleged by Mr. Malden in Count VI, "are wholly dependent on the viability of the underlying claims." *Buttron v. Sheehan*, No. 00 C 4451, 2003 WL 21801222, *18 (N.D. Ill. 2003). Thus, since Mr. Malden has no viable underlying claims (we grant defendants summary judgment on Count I today, and Count II was dismissed long ago), he also has no viable indemnity claim.

## CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment (doc. # 112) is granted as to Counts I, III and VI, which are the only remaining counts in the case. We therefore enter final judgment in favor of defendants and against Mr. Malden. A judgment order shall be entered under Fed. R. Civ. P. 58.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: September 10, 2009**

24